No. 22-11707

# In the United States Court of Appeals for the Eleventh Circuit

———————

PAUL A. EKNES-TUCKER, ET AL.,

*Plaintiffs-Appellees,*

&

UNITED STATES OF AMERICA,

*Intervenor Plaintiff-Appellee,*

v.

GOVERNOR OF THE STATE OF ALABAMA, ET AL.,

*Defendants-Appellants.*

———————

On Appeal from the United States District Court
for the Middle District of Alabama
No. 2:22-cv-184-LCB

———————

## BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION IN SUPPORT OF THE DEFENDANTS-APPELLANTS

———————

GENE P. HAMILTON
Vice President & General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

## Certificate of Interested Persons And Corporate Disclosure Statement

Counsel of record certifies that the following persons and entities, in addition to those already listed in the parties' briefs, have an interest in the outcome of this case:

| Amicus Curiae | Counsel for Amicus Curiae |
|---|---|
| • America First Legal Foundation | Jonathan F. Mitchell<br>Gene P. Hamilton |

America First Legal Foundation is a not-for-profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have parent corporation, and no publicly held company has a 10 percent or greater ownership interest.

  /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Amicus Curiae*

i

## Table of Contents

Certificate of interested persons and corporate disclosure statement ..................... i

Table of contents ................................................................................................ ii

Table of authorities ........................................................................................... iii

Interest of amici curiae ...................................................................................... 1

Statement of compliance with Rule 29 ............................................................. 1

Introduction ....................................................................................................... 1

    I.    The district court had no authority to enjoin the defendants from enforcing Senate Bill 184 against individuals who are not parties to this lawsuit .......................................................................... 5

    II.    The district court repeatedly and falsely asserted that it had the power to "enjoin" a law, rather than the state officials charged with enforcing it ....................................................................................... 8

    III.    The district court should have severed and preserved the applications of section 4(a)(1)–(3) that are constitutional even under its own reasoning ............................................................... 10

    IV.    The Court should clarify that the district court's preliminary injunction does not "block" section 4(a)(1)–(3), and that the statute remains in effect despite the injunction ................................ 12

    V.    The district court's substantive due process analysis is incompatible with *Dobbs* ............................................................... 15

Conclusion ...................................................................................................... 19

Certificate of compliance ................................................................................ 20

Certificate of service ...................................................................................... 21

# Table of Authorities

## Cases

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ............................................................. 3

*Davis v. Romney,* 490 F.2d 1360 (3d Cir. 1974) .............................................................. 8

*Dobbs v. Jackson Women's Health Organization*, No. 19–1392 ............................... 16, 17

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ........................................................... 2, 6

*Dorchy v. Kansas*, 264 U.S. 286 (1924) ........................................................................ 12

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) .................................................................. 14

*Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020) ....................... 9

*Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174 (1996) ................... 3

*Leavitt v. Jane L.*, 518 U.S. 137 (1996) ........................................................................ 12

Lochner v. New York, 198 U.S. 45 (1905) ..................................................................... 15

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ............................................................... 2

*McKenzie v. City of Chicago*, 118 F.3d 552 (7th Cir. 1997) ........................................... 6

*Michael H. v. Gerald D.*, 491 U.S. 110 (1989) ............................................................. 18

*Obergefell v. Hodges*, 576 U.S. 644 (2015) .................................................................. 18

*Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502 (1990) ............................ 3

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) ......................................... 9

*Osborn v. Bank of United States*, 22 U.S. 738 (1824) .................................................. 13

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) ....................... 3

*Roe v. Wade*, 410 U.S. 113 (1973) ............................................................................ 3, 15

*State of Florida v. Dep't of Health & Human Services*,
    19 F.4th 1271 (11th Cir. 2021) ................................................................................ 7

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) .................................................................. 4, 8

*United States v. Salerno*, 481 U.S. 739 (1987) .............................................................. 3

*United States v. Texas*, 142 S. Ct. 14 (2021) ........................................................... 4, 10

*Virginia v. Hicks*, 539 U.S. 113 (2003) ....................................................................... 12

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ................................16, 17

*Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) ........................3

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021)................................2, 4, 9

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ........................ 13

*Wyoming v. Oklahoma*, 502 U.S. 437 (1992) ............................................. 11

*Zepeda v. I.N.S.*, 753 F.2d 719 (9th Cir. 1983) ...........................................6

## Constitutional Provisions

U.S. Const. art. III ................................................................................1

## Other Authorities

Vikram David Amar, *How Much Protection Do Injunctions Against Enforcement of Allegedly Unconstitutional Statutes Provide?*, 31 Ford. Urb. L.J. 657 (2004).................................................................................6

Jack M. Balkin, *Abortion and Original Meaning*, 24 Const. Comment. 291 (2007)...........................................................................................18

Anne Branigin, *Alabama's ban on medication for trans youths is blocked by judge*, Washington Post, May 14, 2022, available at https://wapo.st/3ON0sPr ...................................................................... 13

Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017).............................................................4, 8

Frank H. Easterbrook, *Abstraction and Authority*, 59 U. Chi. L. Rev. 349 (1992) ..............................................................................................18

Frank H. Easterbrook, *Substance and Due Process*, 1982 Sup. Ct. Rev. 85 ..................................................................................................16

John Hart Ely, *Democracy and Distrust* (1980) ........................................ 15

Richard H. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853 (1991)...............................................................................................6

Cary Franklin, *The Future of Reproductive Rights in America: Texas, SCOTUS, and the Implications of SB8*, https://bit.ly/3yFUAlj .........................10

John Harrison, *Substantive Due Process and Constitutional Text*, 83 Va. L. Rev. 493 (1997) ............................................................................ 15

Michael W. McConnell, *The Right to Die and the Jurisprudence of Tradition*, 1997 Utah L. Rev. 665 ........................................................................18

Rick Rojas, *Alabama's Transgender Youth Can Use Medicine to Transition, Judge Rules*, New York Times, May 14, 2022, available at https://nyti.ms/3Iio8Zl ........................................................................12

Laurence H. Tribe, *Taking Text and Structure Seriously: Reflections On Free-Form Method In Constitutional Interpretation*, 108 Harv. L. Rev. 1221 (1995) ........................................................................15

v

## Interest Of Amici Curiae

Amicus curiae America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution. America First Legal has a substantial interest in this case because it firmly believes, as part of its mission to encourage understanding of the law and individual rights guaranteed under the Constitution of the United States, that a proper understanding of those rights must be informed by reference to their text, and any other rights not expressly mentioned must be deeply rooted in this nation's history and tradition. And further, America First Legal believes that a proper understanding of the law in the United States must include a coherent, consistent understanding of the role of federal courts to decide cases or controversies presented to them.

## Statement Of Compliance With Rule 29

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae, its members, or its counsel financed the preparation or submission of this brief.

## Introduction

The district court's handling of this case is symptomatic of a widely held misunderstanding of the role of the federal judiciary. Article III limits the judicial power of the United States to resolving cases or controversies between litigants. *See* U.S. Const. art. III ("The judicial power shall extend to . . . cas-

es [and] controversies . . . .”). The Constitution does not empower or allow the judiciary to act directly on statutes, and courts do not wield a veto or pre-clearance power that allows them to formally revoke or suspend legislative enactments. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (“[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves.” (citing *California* v. *Texas*, 141 S. Ct. 2104, 2115–16 (2021)).

Several implications follow. First, litigants in federal court may “challenge” only the *behavior* of the *defendants* that they have sued; they do not “challenge” the underlying statute that authorizes the defendants’ conduct. *See Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) (“If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding.”).

Second, judicial relief should extend no further than necessary to redress the injuries of the named plaintiffs—or, in a class action or a case involving representative standing, the injuries of those that the named plaintiffs purport to represent. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) (“[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute.”).

Third, a court should enjoin *only* the conduct of a defendant that would violate the law. A court should not issue injunctions that categorically block

the enforcement of a statutory provision unless there is *no* conceivable set of circumstances in which that statute could be enforced without violating the Constitution or some other source of law. *See Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990) ("[B]ecause appellees are making a facial challenge to a statute, they must show that 'no set of circumstances exists under which the Act would be valid.'" (citation omitted)); *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). If there are *any* lawful applications of a statutory provision, or if the defendant can enforce the statute in discrete situations without violating the law, then an injunction should preserve those lawful applications of the statute and leave the defendant free to enforce the statute in those limited circumstances.[1]

Yet in recent years it has become common for jurists and commentators to envision the federal judiciary as a Council of Revision, with veto-like powers to revoke or formally suspend the operation of laws. On this view, liti-

---

[1]    The Supreme Court and lower federal courts often disregarded the *Salerno* rule in abortion cases. *See, e.g.*, *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 625 (2016); *City of Chicago v. Morales*, 527 U.S. 41, 81 (1999) (Scalia, J., dissenting); *Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174, 1176–81 (1996) (Scalia, J., dissenting from denial of certiorari). Those abortion-specific departures from *Salerno* are no longer good law now that *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 874 (1992), have been overruled.

gants come to court to "challenge" statutes, rather than the conduct of the defendants that they have sued. *See, e.g.*, *United States v. Texas*, 142 S. Ct. 14, 15 (2021) (Sotomayor, J., concurring in part and dissenting in part) (claiming that the plaintiffs had filed to suit "to challenge S. B. 8" rather than the behavior of the named defendants). And judicial relief is designed to thwart the statute that the judge regards as unconstitutional, instead of being tailored to redress the discrete injuries that the plaintiffs have suffered or will suffer at the hands of the defendants, or the particular conduct of the defendants that violates the law.

This unconstitutional understanding of the judicial power is reflected in opinions from Justice Sotomayor, who repeatedly and falsely asserted that federal courts can "enjoin" statutes during the litigation over the Texas Heartbeat Act. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2498 (2021) (Sotomayor, J., dissenting) (asserting that the federal judiciary can "enjoin" a "law"); *id.* at 2499 (claiming that the judiciary can "enjoin" a legislative "Act"); *United States v. Texas*, 142 S. Ct. 14, 15 (2021) (Sotomayor, J., concurring in part and dissenting in part) (same); *id.* (falsely asserting that a federal district court had "enjoined the Texas law."). It is also reflected in the ease by which modern courts dispense "universal injunctions," rather than limiting their relief to the individual plaintiffs that have sued. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2426 (2018) (Thomas, J., concurring) (criticizing this trend); Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017) (same). All of this reflects a belief that

courts have authority to act directly upon statutes, even when they are resolving cases or controversies between a small number of named litigants.

The district court's opinion perpetuates these troubling and disturbing trends—and the Court should call this out regardless of how it rules on the underlying constitutional questions. First, the district court issued a universal injunction that restrained the named defendants from enforcing sections 4(a)(1)–(3) against *anyone*—even though the plaintiffs had not sued as class representatives and never presented an argument for representative standing. Second, the district court stated throughout its opinion that it had the power to "enjoin" the underlying statutory provisions, rather than the conduct of the defendants that had been sued. DE112-1:13–14. Third, the district court categorically enjoined the enforcement of sections 4(a)(1)–(3), without severing and preserving the applications of those statutes that are undeniably constitutional even under the district court's reasoning. All of this reflects a posture in which judges cancel or suspend statutory provisions after deeming them unconstitutional—a patently improper and unconstitutional understanding of the judicial power.

## I. The District Court Had No Authority To Enjoin The Defendants From Enforcing Senate Bill 184 Against Individuals Who Are Not Parties To This Lawsuit

The district court's preliminary injunction purports to enjoin the defendants from enforcing sections 4(a)(1)–(3) against *anyone*. DE112-1:32 ("[T]he Court . . . **ENJOINS** Defendants from enforcing Section 4(a)(1)–(3)

of the Act pending trial." (emphasis in original)). But the plaintiffs in this case consist only of four transgender minors and their parents, two healthcare providers, and one member of the clergy. DE1:3–6. They did not sue as class representatives. The district court therefore lacked authority to enjoin the enforcement of SB 184 against anyone other than the named plaintiffs to this lawsuit. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."); *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("[T]he question at issue [is] whether a court may grant relief to nonparties. The right answer is no."); *Zepeda v. I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983) ("[An] injunction must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs.").[2]

The district court, however, enjoined the defendants from enforcing the sections 4(a)(1)–(3) against anyone—regardless of whether that individual was a party to this case. But the judicial power extends only to resolving cases

---

2. *See also* Richard H. Fallon, *Making Sense of Overbreadth*, 100 Yale L.J. 853, 854 (1991) ("[T]he binding effect of the federal judgment extends no further than the parties to the lawsuit. Against nonparties, the state remains free to lodge criminal prosecutions."); Vikram David Amar, *How Much Protection Do Injunctions Against Enforcement of Allegedly Unconstitutional Statutes Provide?*, 31 Ford. Urb. L.J. 657, 663 (2004) ("All injunctive relief, of course, including preliminary injunctions, binds only the defendants before the court, and applies only to protect the specific plaintiffs who have brought the suit.").

or controversies between parties, and the district court's relief should have extended only to the named litigants, or to classes that have been certified consistent with the requirements of Rule 23.

The precedent of this Court acknowledges that "universal" injunctions of the type entered by the district court may be permissible in "rare" circumstances:

> [A] federal district court may issue a nationwide, or "universal," injunction "in appropriate circumstances." But notably, those appropriate circumstances are rare. A nationwide injunction may be warranted where it is necessary to provide complete relief to the plaintiffs, to protect similarly situated nonparties, or to avoid the "chaos and confusion" of a patchwork of injunctions. Or universal relief may be justified where the plaintiffs are dispersed throughout the United States, when immigration law is implicated, or when certain types of unconstitutionality are found.

*State of Florida v. Dep't of Health & Human Services*, 19 F.4th 1271, 1281–82 (11th Cir. 2021) (citations omitted). But none of those circumstances are present here—and the district court did not even acknowledge these limits on universal injunctions or attempt to fit its universal injunction into any of the categories set forth by this Court. More importantly, none of the plaintiffs are suffering Article III injury from the defendants' enforcement of Senate Bill 184 against nonparties, and they have no third-party standing to assert the constitutional rights of other transgender minors or health-care providers. The only relief to which the plaintiffs might be entitled under Article III

is an injunction that allows *them* to continue providing or receiving the services describes in sections 4(a)(1)–(3) of SB 184.

It has become all too common for federal district courts to hand out universal injunctions as a matter of course[3]—and this the inevitable result of the mindset that regards litigants as "challenging" statutes rather than the conduct of the defendants that they have sued. The effect of these "universal" injunctions is to convert lawsuits into de facto class actions without any need to satisfy the procedures or requirements of Rule 23. *See Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."). But the recent popularity of this maneuver should not obscure its impropriety, especially when the district court did not acknowledge (let alone discuss) the authorities from this Court that limit the availability of universal injunctions.

## II. THE DISTRICT COURT REPEATEDLY AND FALSELY ASSERTED THAT IT HAD THE POWER TO "ENJOIN" A LAW, RATHER THAN THE STATE OFFICIALS CHARGED WITH ENFORCING IT

In many ways the district court's opinion foreshadowed the universal injunction that it eventually issued. Throughout its opinion, the district court claimed that federal courts hold the power to "enjoin" statutes or laws.

---

3.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2426 (2018) (Thomas, J., concurring) (criticizing this trend); Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417 (2017) (same).

DE112-1:13 ("When a federal court preliminarily *enjoins a state law* passed by duly elected officials . . ." (emphasis added)); DE112-1:14 ("Plaintiffs and the United States *seek to enjoin Section 4(a)(1)–(3) of the Act* pending trial" (emphasis added)). So it is hardly surprising that a judge who thinks that courts can enjoin statutes would issue a preliminary injunction that categorically blocks the enforcement of the disputed statutory provisions—rather than limiting its relief to the allegedly unlawful conduct that affects the named plaintiffs.

The notion that courts can "enjoin" a statute is nonsense. Injunctions are directed to litigants, not laws. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute."). As this Court has carefully explained:

> The district court's decision rests on the flawed notion that by declaring the ballot statute unconstitutional, it eliminated the legal effect of the statute in all contexts. But federal courts have no authority to erase a duly enacted law from the statute books. Our power is more limited: we may enjoin executive officials from taking steps to enforce a statute.

*Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (citations and internal quotation marks omitted).

Yet none of this has been enough to stop judges (or even law professors) from continuing to assert that courts can somehow "enjoin" or formally suspend a statute. *See Whole Woman's Health*, 141 S. Ct. at 2498–99 (Sotomayor,

J., dissenting); *Texas*, 142 S. Ct. at 15 (Sotomayor, J., concurring in part and dissenting in part); *see also* Cary Franklin, *The Future of Reproductive Rights in America: Texas, SCOTUS, and the Implications of SB8*, https://bit.ly/3yFUAlj, at 8:00–12:15 (repeatedly and falsely claiming that the Supreme Court and lower federal courts can "stay" laws). The district court appears to have been of a similar mind, which led to an overbroad injunction that categorically enjoined the enforcement of sections 4(a)(1)–(3). The Court should once again remind the district courts that judicial relief is directed toward litigants, not statutes, and there is no such thing as "enjoining" a "law."

## III. The District Court Should Have Severed And Preserved The Applications Of Section 4(a)(1)–(3) That Are Constitutional Even Under Its Own Reasoning

The district court also issued injunctive relief that went beyond its constitutional holdings. The district court claimed, for example, that parents have a fundamental substantive-due-process right "to make decisions concerning the care, custody, and control of their children," DE112-1:16, and that the defendants' enforcement of section 4(a)(1)–(3) unconstitutionally infringes that right. DE112-1:15–21. But that does not justify an injunction that categorically restrains the defendants from enforcing section 4(a)(1)–(3)—even if one were to assume the propriety of a "universal" injunction. At most, the district court's substantive-due-process holding could support an injunction that prevents the defendants from enforcing section 4(a)(1)–(3)

against transgender minors whose parents *want* their child to receive those treatments.

The district court's equal-protection holding can likewise support only limited injunctive relief. The district court held that the defendants' enforcement of section 4(a)(1)–(3) violates the equal-protection rights of *transgender* minors by denying them access to treatments that a member of the opposite biological sex could legally receive. DE112-1:21–24. But that holding can support (at most) an injunction that restrains the defendants from enforcing section 4(a)(1)–(3) against *transgender* minors; the statute remains constitutional (even on the district court's reasoning) as applied to non-transgender individuals. The district court should have limited its injunction accordingly and defined the category of "transgender minors" protected by its ruling.

This is especially true when SB 184 contains an explicit severability clause that compels reviewing courts to sever and preserve every constitutional application of each statutory provision. *See* SB 184, § 8 ("If any part, section, or subsection of this act *or the application thereof* to any person or circumstances is held invalid, the invalidity shall not affect parts, sections, subsections, *or applications* of this act that can be given effect without the invalid part, section, subsection, or application." (emphasis added)); *Wyoming v. Oklahoma*, 502 U.S. 437, 460–61 (1992) ("Severability clauses may easily be written to provide that if application of a statute to some classes is found unconstitutional, severance of those clauses permits application to the accepta-

ble classes."). A state-law severability clause is mandatory and binding on the federal judiciary. *See Virginia v. Hicks*, 539 U.S. 113, 121 (2003) ("Severab[ility] is of course a matter of state law."); *Leavitt v. Jane L.*, 518 U.S. 137, 138 (1996) (per curiam) (same); *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924) ("[T]he state court['s] decision as to the severability of a provision is conclusive upon this Court."). The district court was obligated to preserve the defendants' authority to enforce every constitutionally permissible application of SB 184.

## IV. The Court Should Clarify That The District Court's Preliminary Injunction Does Not "Block" Section 4(a)(1)–(3), And That The Statute Remains In Effect Despite The Injunction

The district court was not alone in believing that it held a power to "enjoin" the disputed statutory provisions. The media also reported (incorrectly) that the district court's preliminary injunction had "blocked" section 4(a)(1)–(3) and formally suspended those provisions of Alabama law. *See, e.g.*, Rick Rojas, *Alabama's Transgender Youth Can Use Medicine to Transition, Judge Rules*, New York Times, May 14, 2022, available at https://nyti.ms/3Iio8Zl (claiming that the preliminary injunction "blocked portions of an Alabama law"); *id.* ("A federal judge temporarily halted part of a new law that prevents doctors from prescribing puberty blockers and hormone therapies to transgender youth."); Anne Branigin, *Alabama's ban on medication for trans youths is blocked by judge*, Washington Post, May 14, 2022,

available at https://wapo.st/3ON0sPr ("Burke's opinion . . . blocks the part of the Alabama law that would prevent doctors from providing minors with age-appropriate gender-affirming care such as puberty blockers and hormone therapy."). But a preliminary injunction does not "block" or "halt" a law; it merely prevents the named defendants from initiating enforcement actions while the injunction remains in effect.

This distinction is crucially important for two reasons. First, the named defendants in this case include only five of the state's 41 district attorneys, and the district court's injunction does nothing to restrain the remaining 36 district attorneys from enforcing SB 184 even while the injunction remains in effect—and even against the named plaintiffs in this case. *See* Fed. R. Civ. P. 65(d)(2); *Osborn v. Bank of United States*, 22 U.S. 738, 802 (1824) ("An injunction binds no person but the parties to the suit."); *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("[A] preliminary injunction . . . d[oes] not enjoin other parties who are authorized by the Act to enforce its provisions."); *see also Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) ("[A] federal court exercising its equitable authority may enjoin *named defendants* from taking specified unlawful actions. But under traditional equitable principles, no court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." (emphasis added) (citations and internal quotation marks omitted)).

Second, and more importantly, the district court's preliminary injunction does not (and cannot) immunize the plaintiffs from future prosecution for vi-

olations of the statute that occur while the injunction is in effect. When a court preliminarily enjoins a defendant from *enforcing* a statute, it is not suspending, revoking, or delaying the effective date of the underlying law. The statute remains in effect; the injunction simply forbids the named defendants to initiate enforcement proceedings while the court's order remains in place. The injunction is nothing more than a judicially imposed non-enforcement policy, and its effect is no different from a non-enforcement policy that the executive imposes upon itself. But none of this can shield those who violate the statute from future prosecution or civil penalties. If a court were to dissolve the preliminary injunction, the defendants would be free to enforce the statute again—both against those who will violate it in the future and against those who have violated it in the past. No one gets an immunity from civil or criminal penalties by violating a statute at a time when the executive or the judiciary has chosen not to enforce it. *See Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The preliminary injunction did not purport to provide permanent immunity for violations of the statute that occurred during its effective period.").[4]

---

4.  *See also id.* at 651–52 (Stevens, J., concurring) ("Since a final judgment declaring a state statute unconstitutional would not grant immunity for actions taken in reliance on the court's decision, certainly a preliminary injunction—which on its face does nothing more than temporarily restrain conduct—should not accomplish that result. Neither the preliminary injunction nor the subsequent judgment declaring the statute unconstitutional can fairly be construed as a grant of absolute immunity from enforcement of the Illinois statute.").

So the Court should squelch the widely held (but mistaken) view that the preliminary injunction formally suspended section 4(a)(1)–(3), and it should clarify that a preliminary injunction is nothing more than a temporary non-enforcement policy that leaves the disputed statutory provisions in effect.

## V.    The District Court's Substantive Due Process Analysis Is Incompatible With Dobbs

The doctrine of "substantive due process" allows federal judges to invent and impose rights that are nowhere to be found in the text of the Constitution. *See* John Harrison, *Substantive Due Process and Constitutional Text*, 83 Va. L. Rev. 493, 535–36 (1997). The doctrine is controversial, and for good reason. To begin, the phrase "substantive due process" is an oxymoron—a contradiction in terms. *See* John Hart Ely, *Democracy and Distrust* 18 (1980) ("'[S]ubstantive due process' is a contradiction in terms—sort of like 'green pastel redness.'"); Laurence H. Tribe, *Taking Text and Structure Seriously: Reflections On Free-Form Method In Constitutional Interpretation*, 108 Harv. L. Rev. 1221, 1297 n.247 (1995) (acknowledging that the "basic linguistic point" that "substantive due process [is] an oxymoron . . . has great force"). The doctrine of "substantive due process" is also associated with the most disreputable and controversial decisions of the Supreme Court, including *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857), *Lochner v. New York*, 198 U.S. 45 (1905), and *Roe v. Wade*, 410 U.S. 113 (1973). Substantive due process is invoked when judges want to declare a statute unconstitutional but can find no text in the Constitution or any other source of law to support their intui-

tion. *See* Frank H. Easterbrook, *Substance and Due Process*, 1982 Sup. Ct. Rev. 85, 125 ("[T]he Court makes no pretense that its judgments have any basis other than the Justices' view of desirable policy. This is fundamentally the method of substantive due process.").

The Supreme Court has never repudiated the doctrine of substantive due process. But it has placed strict limits on its use in an effort to prevent the doctrine from empowering judges to make up and impose whatever rights they want. *See Dobbs v. Jackson Women's Health Organization*, No. 19–1392, slip op. at 14. First, courts may not recognize an unenumerated right under the doctrine of substantive due process unless that right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); *Dobbs v. Jackson Women's Health Organization*, No. 19–1392, slip op. at 5. Second, courts must apply a "careful description" of the alleged right when undertaking this historical inquiry. *See Glucksberg*, 521 U.S. at 721 ("[W]e have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest."); *see also Dobbs*, No. 19–1392, slip op. at 12 (requiring "a careful analysis of the history of the right at issue.").

It is undisputed that the right of minor children to obtain puberty blockers or hormone therapy in an effort change their appearance in a manner that departs from their biologically assigned sex is *not* "deeply rooted in this Nation's history and tradition." But the district court tried to get around this problem by defining the asserted right at an unacceptably high level of gener-

ality. Rather than deploying a "careful" and specific description of the asserted liberty interest, as required by *Glucksberg* and *Dobbs*, the district court instead invoked the abstract right of parents "to make decisions concerning the care, custody, and control of their children," and then asserted that *this* right satisfied the "deeply rooted" in history and tradition test from *Glucksberg*. DE112-1:16.

The district court's analysis defies both *Glucksberg* and *Dobbs*. The question to ask is whether the *specific* right at issue—the right of minor children to obtain puberty blockers or hormone therapy in an effort change their appearance in a manner that departs from their biologically assigned sex—is deeply rooted in this nation's history and tradition. It obviously is not, and the plaintiffs do not argue to the contrary. A court cannot evade *Glucksberg* and *Dobbs* by boosting the level of abstraction at which the relevant right is defined. Physician-assisted suicide, which has long been criminalized throughout American history, cannot be made into a substantive-due-process right by observing that American history and tradition have recognized a generalized right of "personal autonomy." *Glucksberg*, 521 U.S. at 724. And a right to abortion cannot be salvaged under substantive-due-process doctrine by claiming that it should be encompassed within an abstract "right to privacy" or a "right to be let alone," or even a "'right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life.'" *Dobbs*, No. 19–1392, slip op. at 30–31. The district court's maneuver would allow enable courts and litigants to characterize any asserted "substantive

due process" right as "deeply rooted" in this nation's history and tradition simply by manipulating the level of abstraction at which the right is defined. *See Michael H. v. Gerald D.*, 491 U.S. 110, 118, 127 n.6 (1989) (plurality opinion of Scalia, J.); *see also* Michael W. McConnell, *The Right to Die and the Jurisprudence of Tradition*, 1997 Utah L. Rev. 665; Frank H. Easterbrook, *Abstraction and Authority*, 59 U. Chi. L. Rev. 349 (1992).[5]

The district court can perhaps be forgiven for taking the approach that it did because *Dobbs* had not been decided when it issued its ruling—and there is language in *Obergefell v. Hodges*, 576 U.S. 644, 664 (2015), that appears to cabin *Glucksberg*'s "careful description" requirement to cases involving physician-assisted suicide,[6] and that seems to jettison *Glucksberg*'s history-and-tradition test in favor of a "reasoned judgment" standard for discerning unenumerated substantive-due-process rights.[7] But *Dobbs* has fully resurrected *Glucksberg* from its hibernation, and all courts must now use a "careful de-

---

5.  Professor Balkin uses this gimmick to claim that the original meaning of the Fourteenth Amendment encompasses a right to abortion. *See* Jack M. Balkin, *Abortion and Original Meaning*, 24 Const. Comment. 291 (2007).

6.  *See Obergefell v. Hodges*, 576 U.S. 644, 671 (2015)

7.  *See Obergefell v. Hodges*, 576 U.S. 644, 663–64 (2015) ("The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution. That responsibility, however, 'has not been reduced to any formula.' *Poe v. Ullman,* 367 U.S. 497, 542 (1961) (Harlan, J., dissenting). Rather, it requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect.").

scription" of an asserted substantive-due-process right when determining whether that right is deeply rooted in this nation's history and tradition.

## Conclusion

The preliminary injunction should be vacated, and the case remanded with instructions to dismiss.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 

GENE P. HAMILTON                 JONATHAN F. MITCHELL
Vice-President and General Counsel   Mitchell Law PLLC
America First Legal Foundation    111 Congress Avenue, Suite 400
300 Independence Avenue SE      Austin, Texas 78701
Washington, DC 20003          (512) 686-3940 (phone)
(202) 964-3721 (phone)         (512) 686-3941 (fax)
gene.hamilton@aflegal.org       jonathan@mitchell.law

Dated: July 5, 2022           *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 4,744 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

Dated: July 5, 2022

### CERTIFICATE OF SERVICE

I certify that on July 5, 2022, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Eleventh Circuit and served through CM/ECF upon all counsel of record in this case.


/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*