22-11707

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆ ◆

PAUL A. EKNES-TUCKER, REV., BRIANNA BOE, individually and on behalf of her minor son, Michael Boe, JAMES ZOE, individually and on behalf of his minor son, Zachary Zoe, MEGAN POE, individually and on behalf of her minor daughter, Allison Poe, KATHY NOE, *et al.*, individually and on behalf of her minor son, Christopher Noe,

*Plaintiffs-Appellees,*

—v.—

GOVERNOR OF THE STATE OF ALABAMA, ATTORNEY GENERAL, STATE OF ALABAMA, DISTRICT ATTORNEY FOR MONTGOMERY COUNTY, DISTRICT ATTORNEY FOR CULLMAN COUNTY, DISTRICT ATTORNEY FOR LEE COUNTY, *et al.*,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

**BRIEF OF *AMICI CURIAE* STONEWALL UK, ET AL.
IN SUPPORT OF PLAINTIFFS-APPELLEES**

ANDREW RHYS DAVIES
  *Counsel of Record*
JUSTIN L. ORMAND
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
andrewrhys.davies@allenovery.com

MICHAEL RODRIGUEZ MARTINEZ
ALLEN & OVERY LLP
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 683-3800
Facsimile: (202) 683-3999

*Counsel for Amici Curiae*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and 29(c), and Eleventh Circuit Rule 26.1-1(a)(3), 26.1-2(b), and 26.1-3, the undersigned counsel certifies that the following listed persons and parties not already included in the certificates of interested parties contained in the first brief and in any other brief filed have an interest in the outcome of this case:

1.  Bundesverband Trans* e.V. – *Amicus Curiae*;

2.  Davies, Andrew Rhys – Counsel for *Amici Curiae*;

3.  Fundación Colectivo Hombres XX, AC – *Amicus Curiae*;

4.  LGBT+ Denmark – *Amicus Curiae*;

5.  Ormand, Justin L. – Counsel for *Amici Curiae*;

6.  Rodriguez Martinez, Michael– Counsel for *Amici Curiae*;

7.  Seta ry / Seta rf / Seta Lgbtiq Rights in Finland – *Amicus Curiae*;

8.  Stonewall UK – *Amicus Curiae*;

9.  The Australian Professional Association for Trans Health – *Amicus Curiae*;

10. The Federación Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y más – *Amicus Curiae*;

11. The Norwegian Organization for Sexual and Gender Diversity – *Amicus Curiae*;

12. The Professional Association for Transgender Health Aotearoa New Zealand – *Amicus Curiae*;

13. The Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights – *Amicus Curiae*.

*Amici curiae* (1) Stonewall UK, (2) the Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights, (3) Seta ry / Seta rf / Seta Lgbtiq Rights in Finland, (4) the Australian Professional Association for Trans Health, (5) the Professional Association for Transgender Health Aotearoa New Zealand, (6) LGBT+ Denmark, (7) Bundesverband Trans* e.V., (8) the Federación Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y más, (9) Fundación Colectivo Hombres XX, AC, and (10) the Norwegian Organization for Sexual and Gender Diversity each state that they have no parent corporation and that no publicly-held corporation owns 10% or more of their stock.

/s/    *Andrew Rhys Davies*
Andrew Rhys Davies
Counsel for *Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

IDENTITY OF AMICI CURIAE AND STATEMENT OF INTEREST ................ 1

STATEMENT OF THE ISSUES ........................................................... 2

SUMMARY OF THE ARGUMENT ....................................................... 3

ARGUMENT ............................................................................... 4

    I.   Adolescents Have Access to Appropriate Gender-Affirming
         Healthcare in the United Kingdom, Sweden, Finland, Australia,
         and New Zealand .............................................................. 4

         A. United Kingdom ......................................................... 5

         B. Sweden .................................................................. 9

         C. Finland .................................................................. 11

         D. Australia & New Zealand ............................................. 13

    II.   Gender-Affirming Healthcare Is Available to Adolescents in
         Other Developed Countries As Well ........................................ 17

         A. Denmark ................................................................ 17

         B. Germany ................................................................ 18

         C. Spain .................................................................... 19

         D. Mexico .................................................................. 20

         E. Norway .................................................................. 21

CONCLUSION ............................................................................. 23

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Bell v. Tavistock & Portman NHS Found. Tr.*,
    [2021] EWCA 1363 (Civ) ......................................................................8, 9

*Gillick v. West Norfolk & Wisbech Health Authority*,
    [1986] 1 AC 112 (HL) ...................................................................7, 8, 14

*Re A*,
    [2022] QSC 159 (Austl.) ...............................................................16

*Re Imogen (No. 6)*,
    [2020] FamCA 761 (Austl.)...................................................15, 16

*Re J (An Infant): B and B v Director-General of Social Welfare*,
    [1996] 2 NZLR 134 (N.Z.) ...........................................................16

*Secretary, Department of Health and Community Services v.*
*JWB & SMB ("Marion's case")*,
    (1992) 175 CLR 218 (Austl.) ......................................................14

## Statutes and Rules

Alabama Vulnerable Child Compassion and Protection Act,
    Ala. Code §§22-12E-1 *et seq.*...............................................*passim*

Fed. R. App. P. 29(a)(4)(E)........................................................................1

**Other Authorities**

Access to Transgender Hormone Therapy, European Union Agency for Fundamental Rights, https://fra.europa.eu/en/content/access-transgender-hormone-therapy (last visited Aug. 17, 2022) ........................................................19

*Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents*, AusPATH, https://auspath.org.au/2018/02/01/australian-standards-of-care-and-treatment-guidelines-for-trans-and-gender-diverse-children-and-adolescents/ (last visited Aug. 17, 2022) ........................................................15

Background Memorandum and Recommendations, COHERE Finland, https://palveluvalikoima.fi/sukupuolidysforia-alaikaiset (last visited Aug. 17, 2022) ........................................................12, 13

Care of Children Act 2004, Public Act 2004 No. 90, https://legislation.govt.nz/act/public/2004/0090/latest/DLM317233.html..............16

*Convention on the Rights of the Child will become Swedish law*, Government Offices of Sweden, Ministry of Health and Social Affairs (June 14, 2018), https://www.government.se/articles/2018/03/new-legislative-proposal-on-the-convention-on-the-rights-of-the-child/ ...........................................................10

God vård av barn och ungdomar med könsdysfori (Good care of children with gender dysphoria) (April 2015), https://www.socialstyrelsen.se/globalassets/sharepoint-dokument/artikelkatalog/kunskapsstod/2015-4-6.pdf ..............................................11

Guidelines on healthcare concerning gender identity matters, part 9 (2018), https://www.retsinformation.dk/eli/retsinfo/2019/9060 ..........................................18

Hälso- och sjukvårdslag (Health and Medical Services Act (2017)) [SFS] 2017:30 (Swed.), https://www.riksdagen.se/sv/dokument-lagar/dokument/svensk-forfattningssamling/halso--och-sjukvardslag-201730_sfs-2017-30..................................................................10

Helsedirektoratet, https://www.helsedirektoratet.no/retningslinjer/kjonnsinkongruens (last visited Aug. 17, 2022) ........................................................21

The Independent review of gender identity services for young people: Interim report (Feb. 2022), available at https://cass.independent-review.uk/publications/interim-report/ ................................................................6, 7

J. Oliphant et al., *Guidelines for gender affirming healthcare for gender diverse and transgender children, young people and adults in Aotearoa, New Zealand*, Transgender Health Research Lab, University of Waikato (2018), https://researchcommons.waikato.ac.nz/handle/10289/12160 ...............................17

Law 2/2016 (July 1, 2016) (Community of Madrid, Spain)....................................19

Law 8/2016 (May 27, 2016) (Region of Murcia, Spain)........................................19

NHS Standard Contract for Gender Identity Service for Children and Adolescents (Dec. 30, 2019), https://www.england.nhs.uk/wp-content/uploads/2017/04/gender-development-service-children-adolescents.pdf, as amended, Amendments to Service Specification for Gender Identity Development Service for Children and Adolescents (Oct. 6, 2021), https://www.england.nhs.uk/wp-content/uploads/2020/12/amendment-to-cyp-gender-dysphoria-service-specification.pdf........................................................................................................4

NICE, *Evidence review: Gonadotrophin releasing hormone analogues for children and adolescents with gender dysphoria* (Mar. 11, 2021), https://www.evidence.nhs.uk/document?id=2334888&returnUrl=search%3F q%3Dtransgender%26s%3DDate ...........................................................................6

Oslo kommune, https://www.oslo.kommune.no/helse-og-omsorg/helsetjenester/helsestasjon-og-vaksine/helsestasjon-for-ungdom-hfu/helsestasjon-for-kjonn-og-seksualitet-hks/#gref (last visited Aug. 17, 2022) .........................................................................................................21

Oslo universitetssykehus, https://oslo-universitetssykehus.no/behandlinger/kjonnsinkongruens-utredning-og-behandling-av-barn-og-unge-under-18-ar (last visited Aug. 17, 2022) ..................21

Press Release, German Ethics Council, *Ethics Council publishes ad hoc recommendation on transgender identity in children and adolescents* (Feb. 2020), https://www.ethikrat.org/mitteilungen/mitteilungen/2020/deutscher-ethikrat-veroeffentlicht-ad-hoc-empfehlung-zu-trans-identitaet-bei-kindern-und-jugendlichen................................................................................................18, 19

Protocolo para el Acceso sin Discriminación a la Prestación de Servicios de Atención Médica de las Personas Lésbico, Gay, Bisexual, Transexual, Travesti, Transgénero e Intersexual y Guías de Atención Específicas, Government of Mexico, Secretary of Health (2020), https://www.gob.mx/cms/uploads/attachment/file/558167/ Versi_n_15_DE_JUNIO_2020_Protocolo_Comunidad_LGBTTI_DT_Versi _n_V_20.pdf ........................................................................................................20

Royal Australian & New Zealand College of Psychiatrists, Recognising and addressing the mental health needs of people experiencing Gender Dysphoria / Gender Incongruence (Aug. 2021), https://www.ranzcp.org/news-policy/policy-and-advocacy/position-statements/gender-dysphoria ......................14

Simone Mahfouda et al., *Puberty suppression in transgender children and adolescents*, 5 The Lancet Diabetes & Endocrinology 816 (2017), https://www.sciencedirect.com/science/article/pii/S2213858717300992?via %3Dihub#! ..............................................................................................................15

## IDENTITY OF AMICI CURIAE AND STATEMENT OF INTEREST[1]

*Amici curiae* (1) Stonewall UK, (2) the Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights, (3) Seta ry / Seta rf / Seta Lgbtiq Rights in Finland, (4) the Australian Professional Association for Trans Health, (5) the Professional Association for Transgender Health Aotearoa New Zealand, (6) LGBT+ Denmark, (7) Bundesverband Trans* e.V., (8) the Federación Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y más, (9) Fundación Colectivo Hombres XX, AC, and (10) the Norwegian Organization for Sexual and Gender Diversity (together, the "*Amici* Organizations") are non-profit organizations dedicated in whole or in part to securing and protecting the rights of transgender people. The *Amici* Organizations respectfully submit this *amicus curiae* brief to assist the Court in understanding the availability of gender-affirming healthcare for adolescents in each of the *Amici* Organizations' respective home countries.

A more detailed statement of interest for each of the *Amici* Organizations is included in Appendix A.

---

[1]    All parties consented to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), the *Amici* Organizations state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici*, their members, and their counsel contributed money towards the preparation or filing of this brief.

## STATEMENT OF THE ISSUES

Whether the district court's order preliminarily enjoining in part the Alabama Vulnerable Child Compassion and Protection Act, Ala. Code §§22-12E-1 *et seq.*, should be affirmed.

## SUMMARY OF THE ARGUMENT

Alabama law, Ala. Code §§22-12E-1 (the "Alabama Healthcare Ban"), prohibits gender-affirming healthcare for adolescents in the State of Alabama. This Court should affirm the district court's order preliminarily enjoining this damaging act of legislative overreach.

Alabama seeks to defend the Alabama Healthcare Ban as an appropriate reaction to what it describes as a "rapidly growing group of gender dysphoric youth." Brief for Appellant ("Appellant's Br.") at 13. Alabama and its *Amici* States[2] even suggest that the Alabama Healthcare Ban is consistent with and supported by the approach adopted by developed nations, including the United Kingdom, Sweden, Finland, Australia, and New Zealand. *Id.* at 23–24; Br. of *Amici Curiae* State of Arkansas, *et al*. ("*Amici* States Br.") at 4–6, 15–21, 25. It assuredly is not.

The *Amici* Organizations submit this brief to correct the record, so that this Court has the benefit of accurate information about the gender-affirming healthcare that is available to adolescents in countries that Alabama and its *Amici* States have referenced. This brief also provides information about the availability of gender-

---

[2]     The term "*Amici* States" refers to the States of Alaska, Arizona, Arkansas, Georgia, Indiana, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, Utah, and West Virginia, each of which joined an *amicus curiae* brief filed on July 5, 2022, in support of the State of Alabama.

affirming healthcare to adolescents in several other developed countries: Denmark, Germany, Spain, Mexico, and Norway.

As shown in this brief, the Alabama Healthcare Ban is an outlier. In all of the countries surveyed, adolescent patients, together with their physicians and parents and/or legal guardians, make decisions about what gender-affirming healthcare is appropriate. In all of those countries, when it is deemed medically appropriate, adolescent patients have access to treatment that is prohibited under the Alabama Healthcare Ban. Unlike Alabama, these sovereigns leave these important decisions principally to the medical community. The district court's order preliminarily enjoining the Alabama Healthcare Ban in part should be affirmed.

## ARGUMENT

### I.    Adolescents Have Access to Appropriate Gender-Affirming Healthcare in the United Kingdom, Sweden, Finland, Australia, and New Zealand.

Alabama and its *Amici* States cite to materials referencing the United Kingdom, Sweden, Finland, Australia, and New Zealand in support of the argument that there is an international controversy surrounding the issue of allowing adolescents to access critical gender-affirming healthcare. Appellant's Br. at 23–24; *Amici* States Br. at 4–6, 17–25. What Alabama and its *Amici* States neglect to say, however, is that whatever debates may exist over how best to care for transgender adolescents, the governments in these countries—unlike the State of Alabama— have not sought to prohibit clinicians from treating their patients. Therefore, in all

of those countries, adolescents have access to appropriate gender-affirming healthcare, including forms of care that the Alabama Healthcare Ban prohibits.

### A.    United Kingdom

Alabama and the *Amici* States create a misleading impression of adolescents' access to gender-affirming healthcare in the United Kingdom, with citations to publications from the United Kingdom that Alabama suggests evidence a "critical eye toward medical transitions for minors." Appellant's Br. at 3, 23; *see also Amici* States Br. at 20. Alabama, however, ignores the fact that, notwithstanding the publications it cites, where medically indicated, gender-affirming healthcare is available to adolescents in the United Kingdom. In fact, the United Kingdom's publicly-funded National Health Service ("NHS") provides such gender-affirming healthcare free of charge.[3]

Alabama and its *Amici* States misconstrue the review by the U.K. National Institute for Health and Care Excellence ("NICE"), from which they selectively quote. Appellant's Br. at 21–22; *Amici* States Br. at 20. Although NICE concluded that the evidence of the effectiveness of treatment with puberty blockers was of "very

---

[3]    *See generally* NHS Standard Contract for Gender Identity Service for Children and Adolescents (Dec. 30, 2019), https://www.england.nhs.uk/wp-content/uploads/2017/04/gender-development-service-children-adolescents.pdf, as amended, Amendments to Service Specification for Gender Identity Development Service for Children and Adolescents (Oct. 6, 2021), https://www.england.nhs.uk/wp-content/uploads/2020/12/amendment-to-cyp-gender-dysphoria-service-specification.pdf.

low certainty,"[4] it nevertheless recommended that gender dysphoria should be treated with "management plans [that] are tailored to the individual."[5] According to NICE, treatment plans may include "psychological support and exploration and, for some individuals, the use of GnRH analogues [*i.e.*, puberty blockers] in adolescence to suppress puberty; this may be followed later with gender-affirming hormones of the desired sex."[6]

In any event, NICE's review is just one of many inputs that will be considered as part of an ongoing study commissioned by the NHS, whose recent Interim Report makes clear that gender-affirming healthcare should be available to adolescents in the United Kingdom when appropriate. To be sure, the Interim Report urges caution, and states that "clinical services must be run as safely and effectively as possible, within the constraints of current knowledge," and that "treatment options must be weighed carefully."[7] But unlike Alabama, the NHS's Interim Report acknowledges that "treatment decisions must be made in partnership between the clinicians and the

---

[4]    NICE, *Evidence review: Gonadotrophin releasing hormone analogues for children and adolescents with gender dysphoria* (Mar. 11, 2021) at 4–6 (2021), https://www.evidence.nhs.uk/document?id=2334888&returnUrl=search%3Fq%3D transgender%26s%3DDate (follow link to review).

[5]    *Id.* at 3.

[6]    *Id.*

[7]    The Independent review of gender identity services for young people: Interim report at 68 (Feb. 2022), *available at* https://cass.independent-review.uk/publications/interim-report/ (select "Download the Interim report").

children, young people and their families and carers, based on our current understanding about outcomes."[8]

The Interim Report never advocates for a ban on gender-affirming healthcare services for adolescents, but, rather, calls for the immediate expansion and regionalization of services, so that patients under eighteen have access to a better quality of care closer to home, and with reduced waiting time.[9] With regard to puberty blockers in particular, the Interim Report again does not recommend a ban, but instead observes that it is especially important for the treating clinician to be able to demonstrate informed consent.[10]

This point about informed consent—which Alabama and its *Amici* States do not meaningfully address—is critical. In the United Kingdom, minors can validly consent to a medical procedure, provided they have so-called *Gillick* competence.[11] Under *Gillick*, a minor's capacity to make medical decisions depends on their having sufficient intelligence and understanding to make a decision regarding medical

---

[8]     *Id.*

[9]     *Id.* at 69–72.

[10]    *Id.* at 72.

[11]    *See Gillick v. West Norfolk & Wisbech Health Authority*, [1986] 1 AC 112 (HL).

treatment, without regard to a judicially-fixed age limit.[12] It is not the role of the court to intercede into the authority of a clinician in determining whether to recommend treatment, or of a competent minor in determining whether to undergo such treatment.[13]

Applying these principles, the Court of Appeal for England and Wales has established that an adolescent's ability to consent to gender-affirming healthcare—like other healthcare—is a matter for adolescents and their clinicians and parents/legal guardians, not the government.[14] In so holding, the Court of Appeal roundly rejected a trial court's conclusion that adolescents under the age of sixteen were generally incapable of providing such consent and that judicial involvement in the medical decision-making process was therefore needed.[15] The Court of Appeal acknowledged that the provision of gender-affirming healthcare is a complex topic, noting that clinicians should take "great care" before recommending gender-affirming treatment to an adolescent,[16] but concluded that, as far as a minor's *Gillick*

---

[12]    *Id.* ¶ 188B ("[A] minor's capacity to make his or her own decision depends upon the minor having sufficient understanding and intelligence to make the decision and is not to be determined by reference to any judicially fixed age limit.").

[13]    *Id.*

[14]    *Bell v. Tavistock & Portman NHS Found. Tr.*, [2021] EWCA 1363 (Civ) ¶¶ 86–87.

[15]    *Id.* ¶¶ 91–94.

[16]    *Id.* ¶ 92.

competence to consent to such care is concerned, "[n]othing about the nature or implications of the treatment with puberty blockers allows for a real distinction to be made" between that and any other medical treatment.[17] In the Court of Appeal's judgment, "the [trial] court was not in a position to generalise about the capability of persons of different ages to understand what is necessary for them to be competent to consent to the administration of puberty blockers."[18] The State of Alabama is likewise in no such position.

In short, despite the picture Alabama attempts to paint, gender-affirming healthcare is available to any adolescent in the United Kingdom whose clinician recommends it, as long as the required clinical, patient, and parental consents are obtained.

## B.    Sweden

Alabama and its *Amici* States also cite to a review article from Sweden and a Swedish hospital's decision to stop providing gender-affirming healthcare to adolescents under the age of sixteen outside of the clinical-trial setting. Appellant's Br. at 3, 23, 43; *Amici* States Br. at 19–20. In the *Amici* States' view, these events in Sweden support the Alabama Healthcare Ban by showing that there is not enough evidence regarding the outcomes of gender-affirming healthcare. Alabama and the

---

[17]    *Id.* ¶ 76.

[18]    *Id.* ¶ 85.

*Amici* States again fail to inform the Court that gender-affirming healthcare is available to adolescents in Sweden, and that the Swedish government has not inserted itself into this medical decision-making in the way that the State of Alabama has done through the Alabama Healthcare Ban.

In Sweden, access to healthcare is governed by the Health and Medical Services Act.[19] Under the framework of that law, medical treatment is valid so long as it comprises treatment that can relieve or alleviate pain or illness. Gender-affirming healthcare, as with all medical practice, needs to be performed within the framework of the law, based on medical evidence and well-known practice. Sweden also follows the United Nations Convention of the Rights of the Child, which recognizes a child's right to have a say in their medical treatment, and that this right increases with age.[20]

For over twenty years, adolescent patients in Sweden have had access to gender-affirming healthcare. The Swedish National Board of Health and Welfare promulgates national guidelines to support clinicians in making decisions

---

[19]    Hälso- och sjukvårdslag (Health and Medical Services Act (2017)) [SFS] 2017:30 (Swed.), https://www.riksdagen.se/sv/dokument-lagar/dokument/svensk-forfattningssamling/halso--och-sjukvardslag-201730_sfs-2017-30.

[20]    *Convention on the Rights of the Child will become Swedish law*, Government Offices of Sweden, Ministry of Health and Social Affairs (June 14, 2018), https://www.government.se/articles/2018/03/new-legislative-proposal-on-the-convention-on-the-rights-of-the-child/.

concerning the healthcare needs of their patients.[21] Since 2015, the guidelines have addressed hormone treatment for gender dysphoria. The guidelines state that if adolescent patients suffer due to their gender dysphoria, clinicians may prescribe both puberty blockers and gender-affirming hormones.

Ultimately, in Sweden, a clinician's professional judgment provides the basis on which treatment is or is not recommended. In Sweden, the decision to undergo gender-affirming healthcare is made between patients, their parents, and their clinicians. For example, some medical providers in Sweden have recently reconsidered the decision to administer hormones or hormone blockers to patients that have not already started them, but other medical providers continue to provide gender-affirming treatment based on the national guidelines and their professional judgment. Critically, any decision regarding whether to prescribe gender-affirming treatment remains between clinicians and their patients. The government is not involved in that decision-making process.

### C.  Finland

Alabama and the *Amici* States cite to recommendations promulgated by the Council for Choices in Health Care in Finland ("COHERE Finland") in support of

---

[21]     God vård av barn och ungdomar med könsdysfori (Good care of children with gender                    dysphoria)                (April                  2015), https://www.socialstyrelsen.se/globalassets/sharepoint-dokument/artikelkatalog/kunskapsstod/2015-4-6.pdf.

their position that uncertainty regarding treatment outcomes justifies Alabama's actions here. Appellant's Br. at 23; *Amici* States Br. at 20. But Alabama seeks to do something Finland has never done—ban treatment—and Alabama and its *Amici* States misconstrue the contours of the COHERE Finland recommendations they cite.

COHERE Finland is a permanent body appointed by the Finnish government that works in conjunction with Finland's Ministry of Social Affairs and Health.[22] In 2011, Finland created an avenue for adolescents to seek treatment for trauma caused by gender dysphoria. Although adolescents cannot access surgical treatment for gender dysphoria until age eighteen, they can begin the diagnostic process at age thirteen.[23] COHERE Finland's recommendations recognize a treatment protocol for transgender adolescents as part of the Finnish healthcare system.

Patients whose puberty has not started and who experience long term or severe gender dysphoria-related anxiety can be sent for consultation at the university hospitals in Helsinki or Tampere.[24] There, after conducting diagnostics to confirm medical necessity with no contraindications, clinicians can treat a patient with

---

[22]    *See* Background Memorandum and Recommendations, COHERE Finland, https://palveluvalikoima.fi/sukupuolidysforia-alaikaiset (last visited Aug. 17, 2022).

[23]    *See id.*

[24]    *Id.*

puberty blockers upon the onset of puberty.[25] It is also possible to access medication to block menstruation.[26]

COHERE Finland's recommendations also state that an adolescent who has already begun puberty can be referred to a university hospital for gender-identity examinations and treatment if the patient's gender identity variation and related dysphoria appear stable over the long term.[27] Gender-affirming hormonal interventions can be prescribed for patients commencing at age sixteen, absent contraindications, if the patient's gender dysphoria is considered permanent and severe and the patient has the capacity to understand the impact of the non-reversible aspects of treatment and the pros and cons of hormonal treatment.[28]

### D.    Australia & New Zealand

Alabama briefly references a statement by the Royal Australian & New Zealand College of Psychiatrists in support of its assertion that there is a lack of evidence regarding the outcomes of gender-affirming healthcare. Appellant's Br. at 24. But nowhere does the statement say that gender-affirming healthcare should not be made available to adolescents, as Alabama seeks to do here. In fact, the statement makes recommendations on how to "support the mental health needs of people

---

[25]    *Id.*

[26]    *Id.*

[27]    *Id.*

[28]    *Id.*

experiencing Gender Dysphoria/Gender Incongruence," including assessment and treatment "based on the best available evidence."[29] In any event, both Australia and New Zealand allow adolescents to access gender-affirming healthcare, where medically appropriate.

In Australia, a parent generally has power to consent to medical treatment, but the parental power to consent diminishes as the patient's capacities and maturities grow.[30] The Australian High Court has adopted the *Gillick* competence framework, *supra* at 7–8, holding that a minor is capable of giving informed consent, and a parent is no longer capable of consenting on the minor's behalf when the minor achieves *Gillick* competence—a sufficient understanding and intelligence to enable them to understand fully what treatment is proposed.[31] The Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents ("ASOCT Guidelines"), promulgated by AusPATH, recommend that clinicians prescribe puberty blockers, hormone treatment, and psychological support where, following a diagnosis of adolescent gender dysphoria and a medical assessment, the

---

[29]    Royal Australian & New Zealand College of Psychiatrists, Recognising and addressing the mental health needs of people experiencing Gender Dysphoria / Gender Incongruence (Aug. 2021), https://www.ranzcp.org/news-policy/policy-and-advocacy/position-statements/gender-dysphoria.

[30]    *Secretary, Department of Health and Community Services v. JWB & SMB* ("*Marion's case*"), (1992) 175 CLR 218 (Austl.).

[31]    *Id.* at 237 (Mason CJ, Dawson, Toohey and Gaudron JJ) (citing *Gillick v West Norfolk & Wisbech Area Health Authority*, [1986] AC 112).

patient agrees that hormone therapy or puberty blockers is in their best interest.[32] The ASOCT Guidelines rely on empirical evidence and clinical consensus, and were developed in consultation with professionals working with transgender and gender diverse communities across Australia and New Zealand.[33]

Legal access to gender-affirming healthcare for patients under eighteen was addressed in 2020 by the Australian Family Court in *Re Imogen*.[34] The Court found that adolescent patients can legally receive hormone treatment, but there must be no dispute between parents (or those with parental responsibility), the medical practitioner, and the patient with regard to the patient's *Gillick* competence, diagnosis of gender dysphoria, or the proposed treatment for alleviating the suffering

---

[32]   *Australian Standards of Care and Treatment Guidelines for Trans and Gender Diverse Children and Adolescents*, AusPATH, https://auspath.org.au/2018/02/01/australian-standards-of-care-and-treatment-guidelines-for-trans-and-gender-diverse-children-and-adolescents/ (last visited Aug. 17, 2022).

[33]   *Id.* Australia is also home to clinical research affirming the medical benefit of puberty blockers for transgender youth. One published Australian study identified that, although limited, available evidence points to the safety of puberty blockers and the psychological benefits of suppressing puberty before the possible future commencement of hormone therapy. *See* Simone Mahfouda et al., *Puberty suppression in transgender children and adolescents*, 5 The Lancet Diabetes & Endocrinology 816 (2017), https://www.sciencedirect.com/science/article/pii/S2213858717300992?via%3Dihub#!.

[34]   *Re Imogen (No. 6)*, [2020] FamCA 761 (Austl.).

caused by the gender dysphoria.[35] Any dispute requires an application to the Family Court.[36] But where the adolescent, their parents, and their clinician are all in agreement about the need for treatment, care is available and there are no governmental barriers.

In New Zealand, the Care of Children Act 2004 empowers adolescents aged sixteen and older to consent to medical care.[37] With respect to medical care generally, including gender-affirming care, adolescents under sixteen years of age may consent to treatment on their own provided they meet the standard for competence in *Gillick*, *supra* at 7–8, which the New Zealand Court of Appeal has cited with approval.[38] Family support is however considered an important aspect of gender-affirming care for all adolescents in New Zealand, with families involved in care wherever possible.

New Zealand has provided gender-affirming healthcare to adolescents for over fourteen years. Clinicians in New Zealand also consider the ASOCT

---

[35]    *Id.*

[36]    *Id.* Another court in Australia has recently taken a more expansive view, concluding *Gillick*-competent adolescents can provide their own consent to gender-affirming healthcare, even without parental consent. *See Re A*, [2022] QSC 159 (Austl.).

[37]    Care of Children Act 2004, Public Act 2004 No. 90, https://legislation.govt.nz/act/public/2004/0090/latest/DLM317233.html.

[38]    *Re J (An Infant): B and B v Director-General of Social Welfare*, [1996] 2 NZLR 134 (N.Z.).

Guidelines, the promulgation of which, as noted, involved a review by New Zealand adolescent health clinicians. In addition, in 2018, the University of Waikato published guidelines for gender-affirming healthcare for gender diverse and transgender patients.[39] These guidelines allow for puberty blockers to be prescribed depending on the stage of puberty, and also allow for hormone treatment.[40]

## II.    Gender-Affirming Healthcare Is Available to Adolescents in Other Developed Countries As Well

A review of the status of gender-affirming healthcare access in other countries reveals a common thread.[41] With appropriate consultation and diagnoses, adolescents can access various forms of gender-affirming care, including treatment that the Alabama Healthcare Ban prohibits.

### A.    Denmark

In Denmark, hormone therapy for adolescents is available through the Danish public healthcare system, after consultation with a multidisciplinary team of doctors

---

[39]    J. Oliphant et al., *Guidelines for gender affirming healthcare for gender diverse and transgender children, young people and adults in Aotearoa, New Zealand*, Transgender Health Research Lab, University of Waikato (2018), https://researchcommons.waikato.ac.nz/handle/10289/12160.

[40]    *Id.* at 29–31.

[41]    Absent an *amicus curiae* from France, this brief does not address the position in that country. But the State and the *Amici* States do not suggest that France has prohibited clinicians from providing gender-affirming healthcare. To the contrary, as characterized by the State and the *Amici* States, France's Académie Nationale de Médecine contemplates that clinicians will provide such treatment, provided they exercise "great medical caution." Appellant's Br. at 24; *Amici* States Br. at 22 n.56.

including pediatric, psychiatric, and endocrinology specialists.[42] For patients under the age of fifteen, parental consent is required for treatment in the Danish healthcare system.

**B.    Germany**

Gender-affirming healthcare for patients under the age eighteen is available in various forms throughout Germany. Medical associations in Germany are in the process of developing guidelines for gender-affirming healthcare relating to teenage patients.

In February 2020, the German Ethics Council addressed healthcare for transgender teenagers.[43] The Council's statement acknowledged the tension created by the potentially irreversible consequences of both administering treatment and withholding treatment.[44] The Council's statement declared that it is not an option to limit access to gender-affirming healthcare for adolescents who understand the consequences of their decision to undergo treatment.[45] The Council noted that where

---

[42]    *See* Guidelines on healthcare concerning gender identity matters, part 9 (2018), https://www.retsinformation.dk/eli/retsinfo/2019/9060.

[43]    Press Release, German Ethics Council, *Ethics Council publishes ad hoc recommendation on transgender identity in children and adolescents* (Feb. 2020), https://www.ethikrat.org/mitteilungen/mitteilungen/2020/deutscher-ethikrat-veroeffentlicht-ad-hoc-empfehlung-zu-trans-identitaet-bei-kindern-und-jugendlichen/.

[44]    *Id.*

[45]    *Id.*

"the child is sufficiently capable of insight and judgement to understand the scope and significance of the planned treatment, to form his own judgement and to decide accordingly, his will must be decisively taken into account."[46]

### C.    Spain

In Spain, patients over the age of sixteen can validly consent to medical care, including gender-affirming healthcare.[47] Access to gender-affirming healthcare is generally available throughout the country for patients under the age of sixteen, and specific laws governing availability vary among the seventeen autonomous regions in the country. For example, in the Community of Madrid, adolescent patients have the right to treatment by pediatric physicians and to receive puberty blockers and hormone therapy upon the onset of puberty.[48] In the Region of Murcia, patients over twelve can access gender-affirming healthcare with consent of the minor's legal representative.[49] Throughout Spain, gender-reassignment surgery is prohibited before the age of majority.

---

[46]    *Id.*

[47]    Access to Transgender Hormone Therapy, European Union Agency for Fundamental Rights, https://fra.europa.eu/en/content/access-transgender-hormone-therapy (last visited Aug. 17, 2022).

[48]    Law 2/2016 (July 1, 2016) (Community of Madrid, Spain).

[49]    Law 8/2016 (May 27, 2016) (Region of Murcia, Spain).

## D.    Mexico

Transgender healthcare in Mexico is guided by the Protocol for Access without Discrimination to Health Care Services for Lesbian, Gay, Bisexual, Transsexual, Transvestite, Transgender and Intersex Persons and Specific Care Guidelines.[50] The Protocol is observed in healthcare facilities administered by the Mexican federal government. The Protocol acknowledges that the process of defining one's sexual orientation, gender identity and/or expression may occur at early ages.[51] The Protocol therefore advises that medical facilities err in favor of providing medical care,[52] and recommends that the use of puberty blockers and hormone treatment be considered.[53]

In addition to the Protocol, various Mexican states have reformed their civil codes to recognize the right to gender-affirming healthcare for patients under eighteen.

---

[50]    *Protocolo para el Acceso sin Discriminación a la Prestación de Servicios de Atención Médica de las Personas Lésbico, Gay, Bisexual, Transexual, Travesti, Transgénero e Intersexual y Guías de Atención Específicas*, Government of Mexico, Secretary of Health (2020), https://www.gob.mx/cms/uploads/attachment/file/558167/Versi_n_15_DE_JUNIO_2020_Protocolo_Comunidad_LGBTTI_DT_Versi_n_V_20.pdf.

[51]    *Id.* at 35.

[52]    *Id.* at 36.

[53]    *Id.*

### E.     Norway

In Norway, both puberty blockers and hormone therapy are available to adolescent patients, although surgical treatment is generally not available before the age of majority. Access to gender-affirming healthcare, including hormone therapy and mental health support, for adolescent patients is defined in the National Guidelines on the Treatment of Gender Incongruence, promulgated by the Norwegian Directorate of Health.[54] Puberty blockers are administered to patients based on their pubertal development stage. Any patient over the age of sixteen may access puberty blockers and hormone therapy upon prescription by a clinician; parental consent is not required.

For adolescents under sixteen, puberty blockers are available with parental consent on a case-by-case basis after an evaluation by medical experts, either through the clinician specialist team at Oslo University Hospital or via a health service organized under the Municipality of Oslo which specializes in services for gender non-confirming and LGBTQI youth.[55]

---

[54]     Helsedirektoratet,
https://www.helsedirektoratet.no/retningslinjer/kjonnsinkongruens (last visited Aug. 17, 2022).

[55]     Oslo universitetssykehus, https://oslo-universitetssykehus.no/behandlinger/kjonnsinkongruens-utredning-og-behandling-av-barn-og-unge-under-18-ar (last visited Aug. 17, 2022); Oslo kommune, https://www.oslo.kommune.no/helse-og-omsorg/helsetjenester/helsestasjon-og-

\*     \*     \*

The Alabama Healthcare Ban finds no support in the practices of other developed nations. In all of the jurisdictions whose practices are described above, adolescents have access to gender-affirming healthcare, when medically indicated. As with many forms of medicine, debate exists over how to improve the quality of care and over the need for more evidence of long-term efficacy and impact. That debate has prompted other developed nations to study the care and improve conditions for its delivery, not to ban it.

---

vaksine/helsestasjon-for-ungdom-hfu/helsestasjon-for-kjonn-og-seksualitet-hks/#gref (last visited Aug. 17, 2022).

## CONCLUSION

For all of these reasons, the district court's order preliminarily enjoining the

Alabama Healthcare Ban in part should be affirmed.

Dated: August 17, 2022                    Respectfully submitted,


*/s/ Andrew Rhys Davies*
Andrew Rhys Davies
*Counsel of Record*
Justin L. Ormand
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
andrewrhys.davies@allenovery.com

Michael Rodriguez Martinez
ALLEN & OVERY LLP
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 683-3800
Facsimile: (202) 683-3999

*Counsel for Amici Curiae*

## APPENDIX A

**Stonewall UK** has fought since 1989 to create transformative change in the lives of LGBTQ+ people across communities in the United Kingdom and around the world. Stonewall UK seeks to drive positive change in public attitudes and public policy, and to ensure that LGBTQ+ people can thrive throughout their lives by building deep, sustained change programs with the institutions that have the biggest impact on them. Stonewall UK's work includes supporting legal efforts to ensure that trans young people have access to gender-affirming medical treatment.

**The Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights** ("RFSL") is a non-profit community organization that has been advocating for the rights of LGBTQIA persons in Sweden and internationally since its founding in 1950. RFSL engages support and educational services, political advocacy, lobbying initiatives, and community space in furtherance of its mission supporting LGBTQIA persons. Since 2001, RFSL has formally included transgender people within the communities it serves. RFSL's key initiatives today include transgender rights advocacy, asylum rights, and family law.

**Seta ry / Seta rf / Seta Lgbtiq Rights in Finland** is a non-profit organization that has been advocating for the rights of LBTI persons in Finland since its founding in 1974. Seta ry / Seta rf / Seta Lgbtiq Rights in Finland aims for an equal society

and individual welfare that includes everyone, regardless of sexual orientation, gender identity and gender expression.

**The Australian Professional Association for Trans Health** ("AusPATH") is Australia's principal body representing, supporting, and connecting those working to strengthen the health, rights, and wellbeing of all transgender people—binary and non-binary.

The AusPATH membership comprises over 350 experienced professionals working across Australia. AusPATH firmly believes that all young people who desire puberty suppression should be able to access such care in a timely manner under appropriate supervision and assessment by a multidisciplinary team. AusPATH advocates for access to timely, culturally-safe and person-centered gender-affirming healthcare as critical to protect transgender children, adolescents, and adults from negative health and well-being implications.

**The Professional Association for Transgender Health Aotearoa New Zealand** ("PATHA NZ") is an incorporated society established in May 2019 to be an interdisciplinary professional organization working to promote the health, well-being, and rights of transgender people. PATHA NZ comprises over 200 members who work professionally for transgender health in clinical, academic, community, legal, and other settings.

A-2

As a society committed to supporting gender-affirming care, PATHA NZ's role includes advocacy both within New Zealand and internationally. PATHA NZ views gender-affirming care for children and adolescents as an essential part of healthcare and views the denial of access to care until the age of eighteen in any country or state as a violation of human rights.

**LGBT+ Denmark** is Denmark's largest and oldest political organization for LGBT+ people in Denmark. LGBT+ Denmark fights for everyone to be able to live their life in full compliance with their own identity through rights, safe communities, and social change—locally, nationally and globally.

**Bundesverband Trans\* e.V.** ("BVT\*") is the largest transgender association in Germany. The association's common endeavor is the commitment to gender diversity and self-determination. BVT\* is committed to human rights and to the respect, recognition, equality, social participation and health of transgender and non-binary people.

**The Federación Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y más** ("FELGBTI+") is the largest LGBTI+ organization in Spain and one of the largest in Europe, with fifty-seven nongovernmental organizations and associations collaborating as member entities. It is one of only eight LGBTI+ organizations in the world that has consultative status with the United Nations. With

thirty years of history, FELGBTI+ is one of the reference organizations in the promotion and defense of rights for LGBTI+ people.

FELGBTI+'s mission is to defend and promote human rights and equality for lesbian, gay, transgender, bisexual, and intersex people and their families in all areas of life (social, health, work, educational, cultural, etc.). In addition, FELGBTI+ works to strengthen and unify the LGBTI associative movement in the Spanish territory from a networking approach and a secular, feminist, nonpartisan, and non-unionist perspective.

**Fundación Colectivo Hombres XX, AC** (the "Fundación") is a non-profit community LGBTI organization with a particular focus on men in Mexico who were assigned a female gender at birth. The Fundación has operated since 2012 as a collective and since 2018 as a Civil Association, and has extensive lobbying experience. The Fundación participated in the drafting of the Protocol for Access without Discrimination to Health Care Services for Lesbian, Gay, Bisexual, Transsexual, Transvestite, Transgender and Intersex Persons and Specific Care Guidelines, which provides guidance for the administration of healthcare to transgender individuals in Mexico.

**The Norwegian Organization for Sexual and Gender Diversity** ("FRI") is a membership-based nongovernmental organization with local chapters throughout Norway. FRI's vision is a society free from harassment and discrimination based on

sexual orientation, gender identity, and/or gender expression. FRI's key activities include national-level advocacy for the rights of LGBTI people, building competency of government institutions and employees within different sectors (education, health, social welfare, justice) to include LGBTI people in a non-discriminatory way, and engaging in international solidarity by partnering with LGBTI organizations in Europe, Asia and Africa.

As a membership and community-based organization, FRI has firsthand experience of the impact that gender-affirming healthcare—or the lack thereof—has on transgender people. FRI is deeply concerned that a law seeking to restrict access to gender-affirming care will be detrimental to the lives of transgender people in Alabama.

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains approximately 4,237 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-Point Times New Roman font.

3.      This document has been scanned for viruses and is virus-free.

Dated: August 17, 2022

                                                        */s/ Andrew Rhys Davies*
                                                        Andrew Rhys Davies

## CERTIFICATE OF SERVICE

I hereby certify that on this day the foregoing brief was served electronically on all parties via CM/ECF.

Dated: August 17, 2022

*/s/ Andrew Rhys Davies*
Andrew Rhys Davies